Argued and submitted September 22, 1986, affirmed January 28, 1987

CASCADE BARGAINING COUNCIL,
*Respondent,*

*v.*

JEFFERSON COUNTY SCHOOL
DISTRICT NO. 509-J,
*Petitioner.*

(ERB UP-29-85; CA A38312)

732 P2d 54

Nancy J. Hungerford, Milwaukie, argued the cause and filed the brief for petitioner.

Paul Gamson, Portland, argued the cause for respondent. With him on the brief was Kulongoski, Durham, Drummonds and Colombo, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner seeks judicial review of a decision of the Employment Relations Board (ERB) that found that petitioner had committed an unfair labor practice by failing to sign a collective bargaining agreement incorporating the language of a factfinder's recommendation which it had accepted and by instituting a vision care plan other than the one provided for in the unsigned agreement. We affirm.

Respondent represents petitioner's teaching employes. Petitioner and respondent were parties to a collective bargaining agreement that expired on June 30, 1984. During negotiations for a new agreement, respondent sought to add vision care to its benefits package. It hoped that the plan would be the OEA Choice plan, which respondent's parent, Oregon Education Association, sponsored.[1] Because of their inability to reach an agreement after bargaining, the parties agreed to mediation. Respondent presented its request for vision care to the mediator. Mediation failed, and the dispute went to factfinding.[2] In its brief to the factfinder, respondent listed vision care as one of its demands, and it included an explanation of the OEA Choice plan. In its brief, petitioner also discussed the issue and reiterated its insistence on choosing the benefit *provider*. However, it did not suggest any particular plan or level of benefits. The original factfinding hearing was postponed so that petitioner and respondent could negotiate further. After those negotiations failed, the

---

[1] Respondent had attempted to gain the right to designate all health insurance carriers in previous bargaining. Those attempts were a major issue between the parties; petitioner adamantly and successfully insisted on retaining that authority for itself. Because of petitioner's refusal to accept the concept of vision care during the bargaining process, the parties did not discuss the details of particular plans before going to mediation and factfinding. In any case, as we note below, the issue in this case is primarily the level of benefits, not the choice of carrier. Petitioner wanted a plan such as OEA Choice, which would pay 80 percent of covered charges; it would have been willing to discuss other carriers providing similar benefits if respondent had been willing to discuss vision care at all. Petitioner's previous insistence on choosing the carrier may explain its failure to recognize the significance of the difference in benefit levels between OEA Choice and the plan petitioner ultimately instituted to the rationale of ERB's decision.

[2] In factfinding the parties choose a disinterested person who holds one or more hearings on the issues in dispute, makes findings of fact on those issues and presents recommendations for the resolution of the dispute. The parties must notify ERB within five days whether they accept the recommendations. If they do not, ERB makes the factfinder's report public. ORS 243.722(3).

factfinder held a hearing on October 26, 1984. Both parties used their original briefs at that hearing. Respondent made no further proposals relating to vision care.

The factfinder recommended a 4% pay raise for the first year of the new agreement "and the addition of the vision care plan sought by [respondent]." Both sides notified ERB that they accepted the recommendation. However, they could not agree on specific language to implement the vision care program. Petitioner refused to sign an agreement which contained the factfinder's precise language, and respondent refused to sign an agreement giving petitioner the choice of carrier.

On January 1, 1985, petitioner instituted a vision plan provided by KMSB, the carrier for its other health benefits. That plan provided different benefit levels from those in the OEA Choice plan; it did not base payments on a percentage of the covered charges, as did the OEA plan. Respondent thereupon filed complaints alleging that petitioner had committed unfair labor practices, in violation of ORS 243.672(1)(h), by failing to reduce the agreement to writing and in violation of ORS 243.672(1)(g),[3] by failing to provide the coverage required in the written agreement which it had refused to sign. ERB found violations in both instances and ordered petitioner to sign the agreement and to adopt the OEA Choice plan. It also ordered petitioner to pay those employes who had received less under the KMSB plan than they would have received under OEA Choice the difference between the two amounts.[4]

---

[3] ORS 243.672(1) provides in part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them.

"(h) Refuse to reduce an agreement, reached as a result of collective bargaining, to writing and sign such contract."

[4] ERB did not order those who received more under KMSB than they would have received under OEA Choice to return the excess amount, because it held that the wrongdoer, not the victim, should bear the consequences of unlawful conduct. Petitioner does not challenge that conclusion.

We first consider whether ERB correctly held that petitioner was obligated to sign a collective bargaining agreement containing the precise language of the factfinder's recommendation when it had accepted that recommendation. Petitioner argues at length that the legislature intended factfinding to be part of a process of helping the parties to reach a voluntary agreement and that ERB, by its decision, has transformed factfinding into binding interest arbitration. This change, it asserts, will destroy the effectiveness of factfinding, because unions and employers will be less likely to accept a factfinder's recommendation if they know that ERB will force them to adopt the factfinder's precise language.

■ Petitioner's arguments do not effectively hide the reality that petitioner *accepted* the factfinder's recommendation. Neither respondent nor ERB imposed those recommendations on petitioner; it voluntarily imposed them on itself.[5] Petitioner argues that the factfinder used very general language in his recommendation. However, petitioner and respondent had the opportunity to work out precise language to implement those recommendations. They failed to do so on the vision care issue, because they disagreed over what the factfinder had actually recommended. Because they had both accepted the recommendation, they were bound by it. That acceptance required them, for lack of better mutually agreed language, to place the precise language they had already accepted into their agreement. Disputes over the meaning of the language would then be a matter of interpreting the agreement, not an excuse for failing to execute it.[6] ERB

---

[5] Petitioner's argument that ERB cannot require it to accept OEA Choice, because the choice among insurance carriers is a permissive rather than a mandatory subject of bargaining, is also without merit. Petitioner is free to bargain on permissive subjects if it chooses to do so. Adoption of a vision care program and the level of benefits are clearly mandatory subjects. Respondent's desire for OEA Choice was at least in part a desire for the benefits it provided, so the issues of choice of carrier and level of benefits were interconnected. Even if the choice of a carrier is a permissive subject, petitioner did not object to respondent's inclusion of the OEA Choice plan in its factfinding brief; neither did it assert, when it accepted the factfinder's recommendation, that it would decide which carrier would provide the coverage. At most, petitioner's argument comes down to an assertion that, because choice of a carrier is a permissive negotiation subject, ERB should construe the factfinder's recommendation as leaving that decision up to petitioner. As we discuss below, there is substantial evidence in support of ERB's contrary finding.

[6] Many of petitioner's arguments arise from its failure to recognize this distinction between the *formation* and the *construction* of an agreement. It does not assert that the factfinder's language was so vague that the parties actually agreed to nothing by

correctly held that petitioner violated ORS 243.672(1)(h).

■ The next issue is whether ERB correctly construed the agreement to require the adoption of the OEA Choice plan. The language is undoubtedly ambiguous, and ERB therefore considered evidence of the history of the negotiations and of the factfinding in order to determine the factfinder's intent in making the recommendation. Petitioner and respondent necessarily accepted that intent when they accepted the recommendation. Because that intention is an issue of fact, and because the resolution of that issue determines the proper construction of the agreement, we are bound by ERB's findings if they are supported by substantial evidence. ORS 183.482(8)(c).[7]

■ There is evidence in the record, which petitioner does not seriously dispute, that respondent proposed an 80 percent vision care plan at the beginning of the bargaining process, although it did not specifically mention OEA Choice. Because petitioner never even accepted the concept of vision care during the short-lived bargaining period and the abortive mediation which followed, the parties did not discuss any specifics of a vision care plan. If they had done so, respondent would have proposed OEA Choice. In preparation for factfinding, respondent stated that the issues between it and petitioner were salaries, vision care and the duration of the agreement. At the first factfinding session, respondent presented a brief arguing for vision care and including a description of the OEA Choice plan. Petitioner stated in its brief that it was not opposed to vision care but wanted to retain the right to choose all medical insurance carriers. It did not propose any particular vision plan or level of benefits.[8]

---

accepting it. The fact that ERB was able to give that language a meaningful construction suggests that such an argument would fail.

[7] Petitioner's factual arguments appear to assume that our review is essentially *de novo*. It bases that assumption on the 1985 amendment to ORS 183.482(8)(c), which provides that substantial evidence "exists to support a finding when the record, *viewed as a whole,* would permit a reasonable person to make that finding." Or Laws 1985, ch 757, § 2. (Emphasis supplied.) Whatever else that provision may mean, *see, e.g., Brown v. AFSD,* 75 Or App 98, 102-104, 705 P2d 236 (1985), *rev den* 300 Or 477 (1986) (Gillette, J., concurring), it does not provide for the scope of review for which petitioner argues. The existence of contradictory evidence does not by itself deprive ERB's findings of substantial evidentiary support.

[8] Petitioner asserts that respondent violated ERB's rules by waiting until there were fewer than seven days before the factfinding to state its position. However, once petitioner accepted the factfinder's recommendation any procedural defects became irrelevant. The only question is the legal effect of the acceptance.

■    ERB could properly infer from the evidence that, when the factfinder recommended "the vision care sought by [respondent]," he intended to recommend the OEA Choice plan. Otherwise, it could find, the recommendation would be so unspecific that it might be meaningless and the acceptance of it would be merely an agreement to agree.[9] Acceptance of a factfinding recommendation is designed to end a dispute, not to lay the groundwork for a new one. Petitioner's arguments simply assert a different view of the evidence from that which ERB adopted. Although that view may also be supportable, it is not our role to determine which we prefer. ERB's findings are supported by substantial evidence and its conclusions are rationally based on those findings. Therefore, we affirm its order.

   Affirmed.

---

[9] It appears from the record that no one on petitioner's side of the negotiations read respondent's brief or saw that it contained the OEA Choice plan. That does not affect ERB's conclusion. ERB could reasonably assume that the factfinder had read the brief. Petitioner's negligence is not excused by the fact that the brief was extensive, nor does it affect the effect of petitioner's acceptance of the recommendation.