Argued and submitted June 10, reversed August 3, 1988

STATE OF OREGON,
EXECUTIVE DEPARTMENT,
*Respondent,*

*v.*

FEDERATION OF OREGON
PAROLE AND PROBATION OFFICERS,
*Petitioner.*

(ERB UP-74-87; CA A45663)

758 P2d 410

Henry H. Drummonds, Portland, argued the cause for petitioner. With him on the brief was Kulongoski, Durham, Drummonds & Colombo, Portland.

Rives Kistler, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

GRABER, J.

**GRABER, J.**

The Federation of Oregon Parole and Probation Officers (FOPPO) seeks review of an order of the Employment Relations Board (ERB). The order requires FOPPO to "cease and desist from refusing to bargain in good faith over the subject of longevity [pay] steps." We reverse.

FOPPO is the collective bargaining representative for state parole and probation officers. ORS 243.650(12). The state is a public employer. ORS 243.650(18). The current dispute arises out of the parties' now-expired 1985-1987 labor agreement, which contained a "Term of Agreement" clause:

> "*Section 1. This Agreement shall* become effective on July 1, 1985, and *expire June 30, 1987,* unless the parties mutually agree to reexecute any or all of its terms and conditions.

> "*Section 2.* If either party desires to renegotiate part of or all of this Agreement, the moving party shall give notice in writing to the other during the period of December 1, 1986, through December 31, 1986. If this Agreement is opened, both parties will have the opportunity to propose modifications, and negotiations regarding such modifications shall begin in January, 1987." (Emphasis supplied.)

That clause had been agreed to before the parties submitted the remaining issues, including longevity pay steps, to a factfinder. *See* ORS 243.722. The factfinder's report, including provisions adding longevity pay steps, was accepted by the parties and formed the basis for their 1985-1987 contract. The contract provided, with respect to step 8 and step 9 longevity pay increases:

> "On July 1, 1988, and thereafter, those employes with at least two (2) years of satisfactory performance evaluations, who have been at Salary Step 7 for at least two (2) years will be eligible for Salary Step 8 which will be an increase of a two and one-half percent (2-1/2%) step differential from Step 7.

> "On July 1, 1990, and thereafter, those employes with at least two (2) years of satisfactory performance evaluations, who have been at Salary Step 8 for at least two (2) years will be eligible for Salary Step 9 which will be an increase of a two and one-half percent (2-1/2%) step differential from Step 8."

In 1987, the parties began bargaining for a successor to the 1985-1987 contract. The state's final salary offer would

have eliminated the step 9 increment and would have funded the step 8 increment from the general two percent wage increase sought by the state for all employes. FOPPO refused to bargain over those proposals. As a result, the state filed the present unfair labor practice charge.[1] In ruling for the state, ERB reasoned that "the State's promise concerning a longevity pay system was no longer legally binding once the [1985-87] collective bargaining agreement expired." Accordingly, ERB concluded that FOPPO had to bargain over the proposed changes in the longevity pay system and was guilty of an unfair labor practice for refusing to do so.

Our review is governed by ORS 183.482 *et seq.* We must first decide, as a matter of law, whether the agreement is ambiguous. ORS 183.482(8)(a). If it is, we must then determine whether the record contains substantial evidence to support ERB's findings of fact regarding what the ambiguous term means. ORS 183.482(8)(c). In determining whether the contract is ambiguous, we need look only to the words of the contract.

The contract is not ambiguous. The two longevity pay provisions are clear: Step 8 takes effect in 1988, and step 9 takes effect in 1990. ERB found an ambiguity due to an "apparent inconsistency" between the general expiration date, June 30, 1987, and the dates for implementing steps 8 and 9. As ERB noted, and as the state argues, the clauses regarding expiration and step increases *could* have been written with reference to each other. However, the absence of an express "exception" to the general expiration date does not make the pay provisions ambiguous; they are subject to only one logical interpretation. *See Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985); *OEC Fed. of Teachers v. ERB,* 29 Or App 39, 42, 562 P2d 552 (1977). They mean that the state agreed to create a new pay step in 1988 and another in 1990, even though the remainder of the agreement expired in 1987. The provisions are not, as the state contends, "necessarily inconsistent."

ERB's construction of the contract is illogical,

---

[1] The state concedes that the parties were free to agree that a particular provision survive the expiration of the contract and that FOPPO is not required to bargain about an otherwise mandatory subject if a binding agreement already was reached concerning it. The dispute is whether such an agreement was reached here.

because it renders the sections pertaining to pay steps 8 and 9 meaningless. Although ERB may interpret one provision in the light of others, it may not render some provisions meaningless if they can logically be interpreted otherwise. The state argues that ERB's interpretation has a "practical but not legal effect," relying on this passage from ERB's order:

> "It is not unusual for a collective bargaining agreement to include provisions that cannot be fully implemented during the term of the contract; e.g., some salary schedules or retirement bonus articles. Such provisions essentially establish a contractual status quo that usually will be carried into successor agreements unless the parties agree otherwise. In practice, such provisions create a burden on the party seeking a change to convince the other party (or, as in this case, an arbitrator) that a change in that status quo is desirable. But their existence in a contract does not render an otherwise-mandatory subject permissive."

There are two defects in that reasoning. First, if possible, ERB's interpretation should give legal effect to all provisions of the contract. Second, the inclusion of specific dates for the two pay steps distinguishes the promise from a more general promise of the type ERB mentions. That distinction can best be explained by example. Had the parties agreed in the 1985-87 contract to pay any employe with ten years' seniority a bonus of x dollars, that provision would have expired in 1987. Employes with less than ten years' service would have had no right to a bonus, and the parties would have had to bargain for its inclusion in the next contract. Such a provision might, as ERB suggests, have a practical future effect of putting the burden for change on the state. The general bonus provision would have expired on the general expiration date, and all terms in the contract would have been implemented and given legal effect. If, however, the contract had called for a bonus of x dollars to be paid on July 1, 1990, to all employes with ten years' service as of that date, the provision would be enforceable in 1990, and neither party would be required to bargain over a proposed change to it. Thus, ERB's reasoning in this case is flawed, because it fails to give content to the unambiguous terms "[o]n July 1, 1988" and "[o]n July 1, 1990."

On review, the state's primary argument is that

ERB's order must be sustained, because the contract is ambiguous and ERB's resolution of the ambiguity is a factual finding[2] supported by substantial evidence in the record. We conclude, as a matter of law, that the agreement is not ambiguous.[3] Therefore, we need not address that argument.

Reversed.

---

[2] In the light of our disposition, we need not decide whether ERB's findings are adequate.

[3] ERB cited, and the state relies on, *Cascade Bargaining Council v. Jefferson Cty. Sch. Dist.,* 83 Or App 418, 732 P2d 54 (1987). That case involved interpretation of an ambiguous contract and, therefore, is irrelevant here.